UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIQUAN LAVONTE TURNER,

    Petitioner,

v.

GREG SKIPPER,

    Respondent.
_____/

Civil Action. No.
18-cv-12286

HONORABLE MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING RESPONDENT'S MOTION TO DISMISS (Dkt. 4), (2) SUMMARILY
DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS, (3) DECLINING
TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (4) DENYING PERMISSION
FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

Daiquan Lavonte Turner, ("Petitioner"), confined at the Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by counsel David L. Moffitt, Petitioner challenges his conviction for second-degree murder, Mich. Comp. Laws § 750.317, and armed robbery, Mich. Comp. Laws § 750.529.

Petitioner filed this petition for a writ of habeas corpus on July 20, 2018. In lieu of filing an answer to the petition, on January 25, 2019, Respondent filed a motion to dismiss on the ground that the petition was not timely filed. See Resp't Mot. (Dkt. 4).

On June 24, 2019, Petitioner filed a response to Respondent's motion. See Pet'r Resp. (Dkt. 9).

For the reasons stated below, the Court will grant Respondent's motion to dismiss the petition as time-barred and also as meritless. The Court also will decline to issue Petitioner a certificate of appealability and deny Petitioner leave to appeal in forma pauperis.

1

## I. BACKGROUND

Petitioner was charged with first-degree felony murder in 2011. At the time of the offense, Petitioner was seventeen years old. On September 26, 2011, Petitioner pleaded guilty to reduced charges of second-degree murder and armed robbery, in exchange for dismissal of the first-degree felony murder charge. The parties also agreed that Petitioner would be sentenced to 20-40 years in prison. Petitioner was sentenced on October 17, 2011, in accordance with the agreement.

Petitioner did not file a direct appeal from his conviction and sentence.

On January 23, 2017, Petitioner, through his current counsel, filed a motion for relief from judgment pursuant to M.C.R. 6.500, et. seq. with the trial court. The trial judge denied the motion. People v. Turner, No. 11-4108-03 (3d Cir. Ct. May 26, 2017). The Michigan appellate courts denied Petitioner leave to appeal. People v. Turner, No. 341157 (Mich. Ct. App. Jan. 25, 2018); lv. den. 918 N.W. 2d 811 (Mich. 2018).

Petitioner's habeas application was filed with this Court on July 20, 2018.

## II. ANALYSIS

### A. Legal Standards

Respondent's counsel argues in his motion to dismiss that Petitioner's habeas petition should be barred from federal habeas review by the one-year statute of limitations. In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." Harris v. New York, 186 F.3d 243, 250 (2d Cir.1999); see also Cooey v. Strickland, 479 F.3d 412, 415-416 (6th Cir. 2007).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the Act's effective date, April 24, 1996, and imposes a one-year limitations period for habeas petitions. 28 U.S.C. § 2244(d)(1).

Petitioner's habeas petition was filed after April 24, 1996, and thus, the provisions of the AEDPA, including the limitations period for filing a habeas petition, apply. See Lindh v. Murphy, 521 U.S. 320, 337 (1997).

Title 28 of the United States Code, sections 2244(d)(1)(A) through (D) states in pertinent part:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

A habeas petition filed outside the time period prescribed by this section must be dismissed. See Isham v. Randle, 226 F.3d 691, 694-695 (6th Cir. 2000), overruled on other grounds, Abela v. Martin, 348 F.3d 164, 172-173 (6th Cir. 2003); See also Lee v. Brunsman, 474 F. App'x 439, 441 (6th Cir. 2012).

**B. Petitioner's Habeas Petition Is Untimely Under the Statute**

This Court at the outset must determine when Petitioner's conviction became "final," for purposes of determining when the limitations period began running. See Williams v. Wilson, 149 F. App'x 342, 345 (6th Cir. 2005). Under § 2244(d)(1)(A), a state-court judgment becomes "final"

when direct review by the state court ends or when the time to seek direct review expires, whichever comes later. See Wilberger v. Carter, 35 F. App'x 111, 114 (6th Cir. 2002).

Petitioner was sentenced on October 17, 2011. Pursuant to Michigan Court Rule 7.205(F)(3), Petitioner had six months from the date of his sentence to file a delayed application for leave to appeal. Petitioner never filed a direct appeal from his conviction and sentence. Accordingly, his judgment of sentence became final, within the meaning of § 2244(d)(1)(A), six months after the sentencing, when the time limit for filing a direct appeal in the Michigan Court of Appeals expired pursuant to the court rule. See Williams v. Birkett, 670 F.3d 729, 731 (6th Cir. 2012). Petitioner's conviction thus became final on April 17, 2012. Petitioner had until April 17, 2013 to timely file a petition for a writ of habeas corpus with this Court, unless the limitations period was somehow tolled.

Petitioner filed a motion for relief from judgment on January 20, 2017. This motion did not toll or expand the statute of limitations. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period pursuant to 28 U.S.C. § 2244(d)(2), because there is no period remaining to be tolled. See Jurado v. Burt, 337 F.3d 638, 641 (6th Cir. 2003); see also Hargrove v. Brigano, 300 F.3d 717, 718, n.1 (6th Cir. 2002).

Petitioner argues that the limitations period should commence at a later date, because his claim is based on a retroactive change in the law. Petitioner alleges that his plea is involuntary and should be vacated because the prosecutor's decision to forego charging him with first-degree murder is illusory in light of the Supreme Court's decision in Miller v. Alabama, 567 U.S. 640, 645 (2012), in which the Supreme Court held that a mandatory sentence of life imprisonment without parole for defendants who were under 18 years old when they committed their crimes violates the Eighth Amendment. Petitioner further argues that the one-year limitations period did

4

not commence until 2016, when the Supreme Court held in Montgomery v. Louisiana, 136 S. Ct. 718, 734 (2016) that Miller applied retroactively.

Section 28 U.S.C. § 2244(d)(1)(C) indicates that the one year limitations period can run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The one-year limitation period for filing a petition for a writ of habeas corpus or a motion to vacate sentence based on a right that was newly recognized by the Supreme Court, however, runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactively applicable. See Dodd v. United States, 545 U.S. 353, 358 (2005). Pursuant to § 2244(d)(1)(C), the one year statute of limitations began running from June 25, 2012, when the Supreme Court decided Miller, and not from the date of the decision in Montgomery, which held Miller to be retroactive. Malvo v. Mathena, 259 F. Supp. 3d 321, 330 (D. Md. 2017). Petitioner therefore had until June 25, 2013 to timely file his habeas petition. The instant petition is untimely.

**C. Petitioner Is Not Entitled to Equitable Tolling**

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." See Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010). The burden is on a habeas petitioner to show that he is entitled to the equitable tolling of the one year limitations period. Id.

5

Petitioner in his response to the motion to dismiss argues that the limitations period should be equitably tolled because his appellate counsel failed to follow his request and file an appeal on his behalf to challenge the validity of his guilty plea. Petitioner claims that after appellate counsel was appointed on February 22, 2012, she visited Petitioner in prison sometime in 2012. Petitioner claimed he told appellate counsel that he wished to challenge the validity of his plea based on the Supreme Court's decision in <u>Miller</u> and had even drafted a proposed legal argument for her to use. Petitioner alleges that his appellate counsel told Petitioner that although she found his argument to have some merit, she could not raise this claim unless or until the Supreme Court held that <u>Miller</u> was retroactive to cases that had already become final at the time of the decision in <u>Miller</u>. Petitioner argues that because appellate counsel believed she could not use the holding in <u>Miller</u> to challenge the validity of his plea until it was made retroactive, she abandoned his appeal. Petitioner claims that other than the single visit with Petitioner in prison in 2012, appellate counsel did not communicate with Petitioner nor did she ever move to withdraw as appellate counsel. Petitioner indicates that it was not until the <u>Montgomery</u> decision came down in 2016, which held that <u>Miller</u> could be applied retroactively, that he became concerned that appellate counsel had abandoned him and at that point contacted a fellow inmate, Mr. Pouncy, and later Mr. Moffitt to assist him with the filing of a motion for relief from judgment to challenge his conviction. Pet'r Resp. at PageID.312-318.

Petitioner is not entitled to equitable tolling on this basis. Although the ineffective assistance of appellate counsel and a petitioner's substantial, involuntary delay in learning about the status of his appeal may justify equitable tolling of the limitations period, <u>see</u> <u>Keeling v. Warden, Lebanon Correctional Inst.</u>, 673 F.3d 452, 462 (6th Cir. 2012), Petitioner is not entitled to equitable tolling because he waited over four years after his appellate counsel allegedly

6

abandoned him in 2012, after informing Petitioner that she believed that she could not use Miller to challenge his conviction and stopped communicating with him before he sought assistance from his current counsel to file a post-conviction motion to challenge his conviction. Even after Montgomery was issued on January 25, 2016, Petitioner waited almost an entire year (until January 20, 2017) to file a motion for relief of judgment. Because Petitioner failed to exercise due diligence in pursuing his state post-conviction or federal habeas remedies after the alleged ineffectiveness of his appellate counsel, he is not entitled to equitable tolling of the limitations period. Keeling, 673 F.3d at 463; see also Winters v. Edwards, 27 F. App'x 327, 329 (6th Cir. 2001) (denying equitable tolling of AEDPA based on the petitioner's claim that attorney failed to file direct appeal and trial court failed timely to appoint counsel, where petitioner waited over five years after conviction to file state collateral proceeding).

The one-year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in Schlup v. Delo, 513 U.S. 298 (1995). McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" Id. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. (quoting Schlup, 513 U.S. at 329). Moreover, in determining whether Petitioner makes out a compelling case of actual innocence, so as to toll the AEDPA's limitations period, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." Id. (quoting Schlup, 513 U.S. at 332). For an actual innocence exception to be credible under Schlup, such a claim requires a habeas petitioner to support his allegations of constitutional error "with

7

new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324.

Petitioner's case falls outside of the actual innocence tolling exception, because Petitioner has presented no new reliable evidence to establish that he was actually innocent of the crimes charged. See Ross v. Berghuis, 417 F.3d 552, 556 (6th Cir. 2005). Any actual innocence exception to the AEDPA's statute of limitations is particularly inapplicable, in light of the fact that Petitioner pleaded guilty to the charges that he challenges in this petition. See Reeves v. Cason, 380 F. Supp. 2d 883, 885 (E.D. Mich. 2005).

**D. Petitioner's claim in the alternative is meritless.**

Assuming the petition is timely, Petitioner is not entitled to relief. His claim is meritless.

Petitioner argues that his plea is involuntary because the prosecutor's promise to dismiss the original first-degree murder charge was illusory when Petitioner as a juvenile could not, under Miller, face a mandatory nonparolable life sentence.

A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. See United States v. Randolph, 230 F.3d 243, 250-251 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. See Spearman v. United States, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

At the time of Petitioner's plea and sentence, Petitioner faced a mandatory sentence of life imprisonment without parole if convicted of first-degree murder. Even if Petitioner pleaded guilty to the lesser included offenses "to avoid a now-unconstitutional sentence of mandatory life

8

imprisonment without the possibility of parole, Miller does not render his guilty plea unconstitutional." Contreras v. Davis, 716 F. App'x 160, 163-164 (4th Cir. 2017).

The Fourth Circuit in Contreras based its ruling on its earlier decision in Dingle v. Stevenson, 840 F.3d 171, 172 (4th Cir. 2016), in which a juvenile had pleaded guilty to murder and other crimes in order to avoid the state's threat that it would seek the death penalty. The Fourth Circuit held that Roper v. Simmons, 543 U.S. 551 (2005), which held that the death penalty was unconstitutional for juvenile offenders, did not apply retroactively to make the defendant's guilty plea coerced or involuntary. Dingle, 840 F.3d at 175–176. Significantly, the Fourth Circuit concluded:

> Contracts in general are a bet on the future. Plea bargains are no different: a classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to forego future favorable legal developments. Dingle received that present benefit—avoiding the death penalty and life without parole—under the law as it existed at the time. Although Roper, in hindsight, altered the calculus underlying Dingle's decision to accept a plea agreement, it does not undermine the voluntariness of his plea. Some element of pressure exists in every deal, as the tradeoff between present certainty and future uncertainty is emblematic of the process of plea bargaining.

Id. at 175.

The Supreme Court, in fact, has held that a "defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." Brady v. U.S., 397 U.S. 742, 757 (1970). In Brady, the Court rejected the petitioner's claim that his guilty plea was involuntary where, after he pled guilty to a federal kidnapping charge, the Supreme Court held that the statute's death penalty provision was unconstitutional. Id. at 747-48.

Accordingly, the plea bargain in this case was not illusory and thus Petitioner's plea was not involuntary.

### E. Petitioner Not Entitled to a Certificate of Appealability

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a). When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if petitioner shows that jurists of reason would find it debatable whether petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. Id.

The Court declines to issue Petitioner a certificate of appealability, because reasonable jurists would not find it debatable whether the Court was correct in determining that Petitioner had filed his habeas petition outside of the one-year limitations period. See Grayson v. Grayson, 185 F. Supp. 2d at 753. The Court will also deny Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous. See Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

### III. CONCLUSION

The Court concludes that Petitioner failed to file his habeas petition within the applicable statute of limitations period. Accordingly, the Court grants Respondent's motion to dismiss (Dkt. 4) and denies with prejudice Petitioner's request for habeas relief (Dkt. 1). Finally, the Court

declines to issue Petitioner a certificate of appealability and Petitioner is denied leave to appeal in forma pauperis.  Petitioner's request for an evidentiary hearing is denied.

SO ORDERED.

Dated: July 26, 2019  
      Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge